UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WINSERT INC. and
WINSERT INC MEDICAL PLAN,

        Plaintiffs,

v.                                               Case No. 11-C-251

KATHLEEN F. HASENFUS,

        Defendant.

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**

      This is an action for equitable relief under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3). Plaintiffs Winsert, Inc., and Winsert, Inc. Medical Plan ("the Plan"), a self-funded employee welfare benefit plan, brought this action seeking equitable relief to obtain reimbursement for medical expenses the Plan paid on behalf of Defendant and former Winsert employee Kathleen F. Hasenfus. The case is currently before the Court on cross-motions for summary judgment. For the reasons that follow, both summary judgment motions will be denied.

**FACTS**

      On December 14, 1999, Defendant underwent open heart surgery for replacement of a failing heart valve. Defendant's medical expenses, which exceeded $41,000, were paid for by the Plan on or about December 14, 1999. Unfortunately, the valve that was implanted was defective. On May 17, 2000, Defendant was required to undergo a second surgery to remove, or explant, the

defective heart valve and replace it with a new one. The total expenses for removal of the defective valve and implanting the new valve amounted to $49,462.24. That amount was paid by the Plan on May 17, 2000.

The Plan contained a subrogation clause giving it the right to recover the medical expenses it paid from any responsible third party who caused the injury or illness for which the medical expenses paid by the Plan were incurred. The covered employee was required to include such costs in any litigation filed or claim made against such third party. The Plan further provided:

> When the claim is settled or paid, the covered person or the covered person's guardian or estate must reimburse the Plan or cause the Plan to be reimbursed for medical, dental, prescription drug, or disability expenses that the Plan has paid or that it is legally obligated to pay to or on behalf of the covered person.

(Pl's Proposed Findings of Fact (PPFOF), ECF No. 59 ¶ 25) In addition, the Plan prohibited a covered person or a covered person's guardian or estate from making any distributions or authorizing any distributions from a settlement or judgment which in any way resulted in the Plan receiving less than the full amount of the expenses it paid "without the written approval of the plan . . . ." (*Id.* ¶ 27.) The participant was also prohibited from releasing any party or their insurer without prior written approval of the Plan. (*Id.*)

The defective heart valve Defendant initially received had been manufactured by St. Jude Medical, Inc. On or about March 27, 2001, less than a year after the second surgery, Defendant commenced an action against St. Jude Medical in the United States District Court for the Eastern District of Wisconsin for damages incurred in connection with the implantation of the defective valve. Among the damages sought by Defendant were the medical expenses incurred in the implantation and explantation of the defective heart valve.

2

On or about June 7, 2004, Defendant settled her claims with St. Jude by entering into a confidential settlement agreement and release of all claims. As a result of the settlement, Defendant received approximately $167,317.00, after deduction of attorney's fees and costs. The Settlement Agreement provided that Defendant was responsible for medical expenses arising out of the explantation and implantation of the defective heart valve. The relevant portion reads:

> Claimant represents and warrants that any liens or claims for any hospital expenses, medical expenses, physician expenses or other healthcare provider expenses arising from or based upon the provision of medical care and treatment to Kathleen Hasenfus in connection with the SJM Silzone® valve, including liens or claims which might be asserted by private or government health insurers, have been or will be satisfied by Claimant. Claimant further understands that Claimant shall remain fully responsible for any future liens or claims as to any future medical expenses, including, but not limited to, hospital, medical, physician or healthcare provider expenses relating to any past, present or future medical care or treatment, and including, but not limited to, any liens or claims arising out of the SJM Silzone® valve.

(PPFOF ¶ 22, ECF No. 59.)

Notwithstanding the above provisions requiring reimbursement of the Plan for medical expenses it paid and prohibiting covered employees from releasing any party from liability for the expenses absent written consent of the Plan, Defendant waived all claims for medical expenses arising out of the implantation and explantation of the defective heart valve as part of her Settlement Agreement with St. Jude's. In addition, she took no steps to notify the Plan that her lawsuit had been settled and that she had received more than $167,000 as a result.

Winsert and the Plan commenced this action on March 9, 2011, after Winsert discovered emails indicating Defendant received the settlement in her action against St. Jude. Winsert discovered the emails on a back-up computer in the course of a search it undertook to locate evidence relevant to a separate action Defendant brought against Winsert following the

3

termination of her employment. While there is evidence Winsert personnel knew that Defendant had sued St. Jude Medical for the defective valve, there is no dispute that Defendant never told Winsert that the suit had resulted in a favorable settlement. There is also no evidence that anyone else told Winsert of the settlement before February 2011.

Winsert claims that instead of reimbursing it for the medical expenses, Defendant went on a "wild spending spree" that included using the settlement proceeds for $47,133 of improvements on her residence and $31,000 for the purchase of a Jaguar automobile. In addition, Winsert alleges that Defendant spent $11,000 on trips to France, Spain, Mexico, Hawaii, New Orleans, and England; $26,000 on bill payments; and approximately $44,000 on gifts to family members. Based upon these facts, Winsert seeks an equitable lien on Defendant's residence in Marinette, Wisconsin and on her Jaguar sufficient to reimburse it for the $49,462 it paid for her medical expenses.

## ANALYSIS

In *Sereboff v. Mid Atlantic Medical Services, Inc.*, the Supreme Court held that a fiduciary of an employee welfare benefit plan may sue a beneficiary for reimbursement of medical expenses paid by the ERISA plan when the beneficiary has recovered for her injuries from a third party but failed to comply with a provision of the Plan requiring that it be reimbursed. 547 U.S. 356 (2006). Section 502(a)(3)(B) of ERISA, 29 U.S.C. § 1332(a)(3)(B), authorizes the fiduciary to obtain appropriate equitable relief to enforce the terms of the plan. Such equitable relief includes a constructive trust over, or an equitable lien on, property owned by the beneficiary that can be identified with the recovery she received. *Admin. Comm. of Wal–Mart Stores, Inc. Assocs.' Health*

4

Case 1:11-cv-00251-WCG   Filed 10/15/12   Page 4 of 9   Document 90

*& Welfare Plan v. Varco*, 338 F.3d 680, 687 (7th Cir. 2003). Here, there is no dispute that the funds received by Defendant in settlement of her claims against St. Jude Medical are traceable to her home and automobile. She admits that $47,133.38 of the settlement proceeds was used for home improvements on her residence, and that $31,008.73 of the settlement proceeds was put toward the purchase of her Jaguar automobile. Based on these facts, Winsert contends it is entitled to an equitable lien on Defendant's home and automobile.

Defendant argues, however, that Winsert's claim should be dismissed because it is barred by the applicable statute of limitations. ERISA does not have a limitations period for actions brought under § 502, 29 U.S.C. § 1132; so federal courts borrow the most analogous statute of limitations from the law of the state that has a significant connection to the suit. *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 615 F.3d 808, 815 (7th Cir. 2010), *cert. denied*, 131 S.Ct. 2924 (2011). The most analogous Wisconsin statute of limitations is the State's six-year statute of limitations for contract actions, and the parties agree that is the limitations period that applies here. Defendant settled her claim against St. Jude Medical in early June 2004, and was paid the full amount due under the agreement, less attorneys fees and costs, by the end of October 2004. Based on these facts, Defendant contends that the six-year statute of limitations expired by October 31, 2010. Since Winsert and the Plan did not file their suit until March 9, 2011, Defendant contends it is barred.

Winsert notes in response, however, that the statute of limitations does not begin to run until the claim accrues. The question of when a claim accrues is determined by federal common law. "The general federal common law rule is that an ERISA claim accrues when the plaintiff knows or should know of conduct that interferes with the plaintiff's ERISA rights." *Young*, 615

F.3d at 817. To determine whether their claim is barred, then, the Court must first determine when Winsert or the Plan knew or should have known that Defendant had settled her claim. If Plaintiffs knew or should have known of the settlement before March 9, 2005, the claim is barred.

When Winsert had actual knowledge of the settlement is not in dispute. As noted above, Winsert personnel learned of the settlement when it came upon Defendant's emails referencing the settlement on its computer system as it was responding to Defendant's discovery requests in a separate proceeding. This was in February of 2011, and the action was filed less than a month later. Since Defendant did not disclose the settlement agreement, which was by its terms confidential, Plaintiffs argue there is no reason to conclude they should have known that Defendant had recovered the medical expenses earlier. Thus, Plaintiffs argue, the case was filed well within the applicable statute of limitations.

Defendant contends, however, that Winsert and/or the Plan should have known of her settlement years earlier. Defendant bases her argument on the fact that the third party administrator for the Plan, Winsert's human resources manager, and Winsert's president knew of the fact she had started a lawsuit against St. Jude Medical as early as 2001. On December 10, 2001, Faye Wilson-Gorring of Claim Management Services, Inc. (CMS), the third party administrator, wrote the attorney who was representing Defendant in her lawsuit against St. Jude Medical, noting that CMS had received a request for certified copies of Defendant's medical records and inquiring about the status of her case. (Decl. of Thomas P. Schwaba, Ex. A.) Defendant's attorney responded by letter dated December 19, 2001, explaining that the suit was in federal court and was being handled by California counsel. The attorney advised Ms. Wilson-Gorring that the case was "a long way from settlement or trial." (*Id.*, Ex. B.) In a third letter dated January 16, 2002, Ms. Wilson-Gorring

6

advised the attorney that Winsert had not renewed its agreement with CMS and that she would be forwarding the file to the new administrator. (*Id.*, Ex. C.) There is no evidence of any further inquiry thereafter.

In addition, a law firm apparently retained to represent St. Jude Medical wrote Winsert's personnel office in October 2001 and April 2002 requesting Defendant's employment records. Only the April 2002 letter referenced Defendant's lawsuit against St. Jude Medical. Winsert's Human Resources Manager responded to the law firm's request, providing copies of the requested records. (Decl. of Kathleen Hasenfus, ECF No. 72-1.) Finally, Defendant notes that Stephen A. Dickenson, Winsert's former president, had recommended the attorney who Defendant retained to represent her in her action against St. Jude Medical and had asked her on occasion how her law suit was going. In a response to an email Dickenson sent Defendant inquiring about her lawsuit on July 16, 2001, Defendant wrote "I have no clue. First they're going to try arbitration. But before arbitration, St. Jude's lawyers are reviewing all my hospital and medical records. Litigation moves at a snail's pace." (Decl. of Richard F. Rice, Ex. D Attach. 1, ECF No. 68-4 at 15.) Based on this evidence, Defendant argues that Plaintiffs in the exercise of due diligence should have known of Defendant's settlement with St. Jude Medical before March 9, 2005, which would make their filing on March 9, 2011, too late.

Whether Plaintiffs, in the exercise of due diligence, should have discovered that Defendant had settled her claim with St. Jude Medical and did not intend to reimburse the Plan prior to March 9, 2005, is a question of fact that cannot be determined on summary judgment. It is true that Defendant did not volunteer the fact that she had settled her claim to Winsert or the Plan. But Plaintiffs apparently made no effort to monitor Defendant's lawsuit after they knew she had filed

7

it. They didn't even instruct Defendant to keep them apprised. Although CMS sent Defendant's attorney a letter inquiring about the case, the replacement administrator apparently did nothing, even though CMS advised the new administrator of the claim and the need to take prompt action to avoid the loss of its right to recover. (Rice Decl. Ex. C, ECF No. 68-3.) Plaintiffs also offer no evidence that they advised St. Jude Medical of their claim or asked the attorneys to keep them apprised of the lawsuit. Had they done so and been refused, the Plan could have filed its own claim in the lawsuit. While Defendant testified that she was aware that she was supposed to reimburse the Plan for some of her medical expenses, there is no evidence that either Winsert or the Plan ever informed her of her obligation under the Plan to notify it of her settlement and obtain the Plan's written consent for such settlement. By failing to reimburse the Plan for the medical expenses it paid for her second operation, Defendant clearly violated the terms of the Plan. But the question here is not whether she violated the terms of the Plan but whether Plaintiff, in the exercise of reasonable diligence, should have known of the facts needed to bring their claim against her before March 9, 2005. To decide that question, a trial is needed.

Plaintiffs also argue that Defendant should be equitably estopped from asserting the statute of limitations because she fraudulently concealed her settlement. "Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant-above and beyond the wrongdoing upon which the plaintiff's claim is founded-to prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Plaintiffs' argument is predicated on their contention that Defendant knew of her obligation to disclose the settlement to the Plan and obtain its written consent before granting a complete

8

release and intentionally failed to do so in order to prevent the Plan from asserting its right to reimbursement. While Defendant does not dispute that she had such obligations under the Plan documents, she denies that she received the Plan documents until February of 2011. If she did not know of her obligation to disclose the settlement and obtain written consent from the Plan before giving a full release, then her conduct cannot be considered fraudulent. Plaintiffs have presented evidence that all employees were provided copies of the Plan documents, but here too a factual dispute precludes entry of summary judgment.[1]

Accordingly and for the reasons set forth above, I conclude that both motions for summary judgment should be and hereby are DENIED. The only issue to be decided at such trial, however, is whether Plaintiffs' claim is barred by the statute of limitations. The Clerk shall place the matter on the Court's calendar for a Rule 16 conference to set it for trial. The parties may appear by telephone.

**SO ORDERED** this  15th  day of October, 2012.

                                          s/ William C. Griesbach
                                          William C. Griesbach
                                          United States District Judge

---

[1] In reaching this conclusion, I have considered Plaintiffs' arguments that some of the documentation, such as the letters from CMS, constitute hearsay and are not admissible. For purposes of deciding the motions before me, I have concluded that these documents are either records kept in the regular course of business, Fed. R. Evid. 803(6), or meet the standards of Fed. R. Evid. 807.